**[Cite as *State v. Smetana*, 2013-Ohio-2376.]**

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

STATE OF OHIO                      C.A. No.       12CA010252

      Appellee

      v.                                   APPEAL FROM JUDGMENT
                                                        ENTERED IN THE

ADAM R. SMETANA                  COURT OF COMMON PLEAS
                                                        COUNTY OF LORAIN, OHIO

      Appellant                            CASE No.       11CR083135

DECISION AND JOURNAL ENTRY

Dated: June 10, 2013

---

HENSAL, Judge.

{¶1} Adam Smetana appeals from a judgment of the Lorain County Common Pleas Court convicting him of sexual battery and sexual imposition. For the reasons set forth below, this Court affirms.

I.

{¶2} Mr. Smetana and K.C. met in 2005 and became friends. They began dating near the end of 2009, but broke up in January 2011. They resumed their friendship shortly thereafter. Mr. Smetana claims that they also recommenced having sexual relations, which K.C. denies.

{¶3} On May 11, 2011, Mr. Smetana went to a park with K.C. and their mutual friend Mike Brooks. After hiking for a couple of hours, they got some food and beer and drove to Mr. Smetana's house to enjoy them. According to K.C., after eating and sitting around a campfire for a few hours, her back began to hurt, so she went inside to take a muscle relaxant and lie down on a couch. Although the pills make her extremely sleepy, K.C. was not concerned about falling

asleep at Mr. Smetana's house because she did not have anything to do in the morning and had spent the night on Mr. Smetana's couch on other occasions following their breakup.

{¶4} Around the time that K.C. went inside, Mr. Brooks asked Mr. Smetana to take him home. According to K.C., while Mr. Smetana was gone, she took her pants off so that she would be more comfortable, and then fell asleep under a blanket. K.C. testified that, when she woke up a few hours later, Mr. Smetana was on the couch with her, had pulled her underwear aside and was penetrating her with his fingers. He was also taking pictures of it with his camera phone. She immediately got up, put her pants back on, and left. She started to drive home, but ended up going to a friend's house instead, where she called the police.

{¶5} The Grand Jury indicted Mr. Smetana for one count of sexual battery and one count of sexual imposition. Mr. Smetana waived his right to a jury trial. At trial, Detective Gregory Hudson testified that the day after the incident he spoke to Mr. Smetana. Detective Hudson further testified that Mr. Smetana admitted to him that he had touched K.C., that she was not awake when he did it, and that he did not have permission to touch or to take pictures of her.

{¶6} Mr. Smetana testified that when he got back from taking Mr. Brooks home K.C. was laying on the couch with her eyes closed. He said that, as he often did, even after their breakup, he laid down next to her when she slept on his couch. Because of where she was positioned, there was not enough room for him so he asked her to move and she complied by scooting closer to the edge. After he got behind her, he began rubbing her back while watching television. After about an hour and a half, K.C. asked him for a glass of water, so he got her one. About 20 minutes later, she asked for a blanket. A little while after that, she stood up to take her pants off. They laid back down in a spooning position, and he resumed rubbing her lower back. As he moved to different areas, she began making soft moaning sounds, which became more

intense when he reached her erogenous zones. He said that he thought she was awake the entire time and only got upset when she discovered that he had been taking pictures. Mr. Smetana also testified that he misunderstood the questions that the detective asked him. According to Mr. Smetana, when the detective asked if he had permission to touch K.C., he thought he was asking whether K.C. had given express verbal permission as opposed to implicit consent through her sounds and conduct. When the detective asked if K.C. was "up," he thought he was asking if she was sitting up during the sexual conduct, not whether she was awake.

{¶7} The trial court determined that Mr. Smetana's testimony was not credible and found him guilty of the offenses. It sentenced him to 180 days in jail and three years of community control. Mr. Smetana has appealed, assigning three errors.

II.

ASSIGNMENT OF ERROR I

{¶8} APPELLANT'S CONSTITUTIONAL GUARANTEE TO DUE PROCESS OF LAW WAS VIOLATED WHEN THE TRIAL COURT DENIED THE APPELLANT AN IMPARTIAL TRIER OF FACT.

{¶9} Mr. Smetana argues that the trial judge was biased. He contends that the judge made inappropriate statements that demonstrate that he did not maintain an open mind during the trial and was not an impartial trier of fact. He also argues that the judge overstepped his bounds and became an advocate for the prosecution by attempting to impeach his testimony.

{¶10} If a party believes that a common-pleas-court judge is prejudiced or has exhibited bias, he may file an affidavit of disqualification under Section 2701.03 of the Ohio Revised Code. *Shih v. Byron*, 9th Dist. No. 25319, 2011–Ohio–2766, ¶ 24; R.C. 2701.03(A). An Ohio district court of appeals "has no authority to render a decision with regard to disqualification, or to void a trial court's judgment on the basis of personal bias or prejudice on the part of a trial

judge." (Citation omitted.) *State v. Hunter*, 151 Ohio App.3d 276, 2002–Ohio–7326, ¶ 18 (9th Dist.) citing *Beer v. Griffith*, 54 Ohio St.2d 440, 441–442 (1978). Consistent with our precedent, we conclude that we do not have authority to address Mr. Smetana's bias arguments or to overturn the court's judgment on that basis. *Shih* at ¶ 24 ("It is not the role of this Court to make a determination as to whether the trial court exhibited a bias against a party."). Mr. Smetana's assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE OF GUILT AND THEREFORE IT WAS ERROR TO HAVE FOUND DEFENDANT GUILTY BEYOND A REASONABLE DOUBT AS TO EVERY ELEMENT OF SEXUAL BATTERY AND SEXUAL IMPOSITION.

**{¶11}** Mr. Smetana argues that his convictions are not supported by sufficient evidence. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶12}** The trial court found Mr. Smetana guilty of sexual battery, a violation of Revised Code Section 2907.03(A)(3), and sexual imposition, a violation of Section 2907.06(A)(3). Under Section 2907.03(A)(3), "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender knows that the other person submits because the other person is unaware that the act is being committed." Under Section 2907.06(A)(3),

"[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender knows that the other person * * * submits because of being unaware of the sexual contact."

{¶13} Mr. Smetana argues that there was insufficient evidence to convict him of the offenses because the State presented no evidence to corroborate K.C.'s testimony. While he concedes that "there is no requirement the State proffer corroborating evidence in this instance," he asserts that he credibly testified that he had the good faith belief that K.C. was aware of his actions. He also argues that K.C.'s testimony was unreliable.

{¶14} Mr. Smetana's arguments go to the weight of the evidence, not its sufficiency. Viewing the evidence in a light most favorable to the prosecution, K.C.'s testimony that Mr. Smetana moved her underwear aside and digitally penetrated her while she was sleeping and Detective Hudson's testimony that Mr. Smetana told him that he knew K.C. was not awake are sufficient to support his convictions for sexual battery and sexual imposition. Mr. Smetana's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE VERDICT OF GUILTY AS TO EACH COUNT OF SEXUAL BATTERY AND SEXUAL IMPOSITION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶15} Mr. Smetana also argues that his convictions were against the manifest weight of the evidence. If a defendant asserts that his convictions are against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v.*

*Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). In making this determination, we are mindful that "[e]valuating [the] evidence and assessing credibility are primarily for the trier of fact." *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994). "Absent extreme circumstances, an appellate court will not second-guess determinations of weight and credibility." *Id.*

{¶16} Mr. Smetana argues that K.C.'s testimony was not credible. He notes that, while she claims to have taken an entire muscle-relaxer pill before lying down, Mr. Brooks testified that he saw her break the pill in half. Mr. Smetana argues that her behavior was also consistent with only having taken half a pill. According to K.C., the pills act like a tranquilizer. If she takes a full pill, "I fall asleep almost instantly * * * I'm too tired to physically get up and move." Mr. Smetana notes that, after she learned that he was photographing her, she was able to get up immediately and drive her car. He asserts that she would not have been able to do those things if she had taken an entire pill as she alleged.

{¶17} Mr. Smetana argues that there were other inconsistencies in K.C.'s testimony. Although she testified that she was not dating anyone on May 11, 2011, her boyfriend's Facebook page indicated that they had been together since April 20, 2011. In fact, it was the new boyfriend's house that she drove to after leaving his house. According to K.C., although she drove to the new boyfriend's house, they were still just friends at that point. She claimed that they began dating near the end of May, but picked April 20 as the starting point because the day has significance in drug culture.

{¶18} Mr. Smetana argues that, not only was K.C. not credible, his testimony about her reactions to his touching was credible. He contends that the only reason K.C. got upset is because she did not know that he was taking pictures and was concerned that her new boyfriend might find out. According to Mr. Smetana, except for the picture taking, it does not make sense

for K.C. to take a muscle relaxant in preparation of sleeping over at his house, to remove her pants, to interact with him physically, and then object to his sexual contact. He argues that, at the very least, there is reasonable doubt with respect to whether he knew that K.C. did not know what was happening.

{¶19} Mr. Smetana does not dispute that it was around 3:00 a.m. when the sexual conduct occurred. Despite the uncertainty over whether K.C. took a whole pill or only half a pill, he has not challenged K.C.'s testimony that, even if she takes only half a pill, she becomes "really sleepy." Although Mr. Smetana testified that K.C. moaned in reaction to his touch, the trial judge had the opportunity to view his testimony and did not "believe one word he said where it departs from the testimony of the victim[.]" That includes his alleged misunderstanding of Detective Hudson's question about whether K.C. was "up" during the conduct.

{¶20} Upon review of the record, we conclude that the trial judge did not lose his way when he found K.C. and Detective Hudson's testimony credible and Mr. Smetana's testimony not credible. Mr. Smetana's convictions, therefore, are not against the manifest weight of the evidence. His third assignment of error is overruled.

III.

{¶21} We do not have authority to review Mr. Smetana's bias claim. His convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
CONCURS.

CARR, P. J.
CONCURRING.

{¶22} I concur in substantial part with the majority's opinion. I write separately, however, regarding the majority's resolution of the first assignment of error. I agree that an appellate court lacks the authority to determine whether a trial court judge should be disqualified for bias or whether a judgment must be vacated on that basis, as those matters are left exclusively for determination by the Chief Justice of the Supreme Court of Ohio. *Beer v. Griffith*, 54 Ohio St.2d 440, 441-442 (1978). However, this Court has the authority to consider whether a party's due process rights have been violated. *State v. Payne*, 149 Ohio App.3d 368, 2002-Ohio-5180, ¶

11 (7th Dist.) ("An appellate court can review the fairness of the trial to determine whether due process rights were violated and remand for a new trial.").

{¶23} Smetana argues that the trial court's comments and conduct during trial evidenced bias that deprived him of due process. "'It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law.'" *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, ¶ 48, quoting *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 34. Furthermore, "[j]udicial bias has been described as 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'" *Dean* at ¶ 48, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph four of the syllabus. Accordingly, this Court has authority to consider the merits of the first assignment of error. However, upon consideration, I would conclude that there was no due process violation.

APPEARANCES:

JACK W. BRADLEY, MALLORY J. HOLMES, and MARY BETH DIGRAVIO, Attorneys at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.