[Cite as *State v. Piatt*, 2020-Ohio-1177.]

STATE OF OHIO      )         IN THE COURT OF APPEALS
                     )ss:      NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE     )

STATE OF OHIO                     C.A. No.       19AP0023

     Appellee

     v.                           APPEAL FROM JUDGMENT
                                       ENTERED IN THE
KYLE PIATT                       COURT OF COMMON PLEAS
                                       COUNTY OF WAYNE, OHIO
     Appellant                   CASE No.     2018-CRC-I 000289

DECISION AND JOURNAL ENTRY

Dated: March 30, 2020

---

SCHAFER, Judge,

**{¶1}** Defendant-Appellant, Kyle Piatt, appeals from his conviction in the Wayne County Court of Common Pleas. This Court affirms.

I.

**{¶2}** Piatt and A.M. share one child together and had an on again/off again relationship for years before the events herein transpired. Their relationship was fraught with turmoil and, at times, erupted into physical violence. A.M. would occasionally strike Piatt and he, in turn, would hit, choke, or otherwise use force against her. He also would frequently subject her to mentally abusive behavior. While A.M. recognized that their relationship was unhealthy, she nonetheless maintained contact with Piatt. She indicated that she did so because she loved him, but also because he would threaten suicide or otherwise plead for help when she tried to end things between them.

{¶3} At the beginning of 2018, while experiencing a break in their relationship, Piatt and A.M. independently sought court intervention. Piatt named A.M. and their son in a paternity suit to establish his parental rights. Meanwhile, A.M. filed for a domestic violence civil protection order ("CPO") against Piatt. The CPO issued on February 1, 2018, but, even after its issuance, Piatt and A.M. routinely contacted one another. They met twice on May 10th, and their second encounter that day is the subject of the instant appeal.

{¶4} A.M. was driving nearby Piatt's residence on the afternoon of May 10th when she realized that he was tailgating her. He followed her until she drove to his residence, and, once she stopped, Piatt removed their son from her car. Piatt carried their son inside a recreational vehicle ("RV") he kept parked in the driveway. After A.M. followed him inside, the two had vaginal intercourse. According to A.M., she repeatedly tried to reject Piatt's advances, but he ignored her protests. According to Piatt, the sex was consensual. A.M. left Piatt's residence with their son shortly thereafter, and, over the next few days, the two exchanged messages on their cell phones. On the sixth day, A.M. visited the police station and reported that Piatt had engaged in unwanted sexual intercourse with her.

{¶5} As a result of the foregoing incident, a grand jury indicted Piatt on one count of sexual battery in violation of R.C. 2907.03(A)(1). The matter proceeded to trial, and a jury found him guilty. The trial court then sentenced him to five years in prison and classified him as a tier III sexual offender.

{¶6} Piatt now appeals from his conviction and raises ten assignments of error for our review. To facilitate our review, we rearrange and consolidate several of the assignments of error.

II.

**Assignment of Error V**

**The trial court erred when it found Appellant guilty without a finding of actus reus.**

**Assignment of Error VII**

**Insufficient evidence that Appellant acted knowingly. (Sic.)**

**{¶7}** In his fifth and seventh assignments of error, Piatt argues that his conviction is based on insufficient evidence because the State failed to prove the actus reus and mens rea elements of his offense. We disagree.

**{¶8}** A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Although we conduct de novo review when considering a sufficiency of the evidence challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33.

**{¶9}** A person shall not engage in sexual conduct with another person who is not his spouse when he "knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution." R.C. 2907.03(A)(1). "A person acts knowingly, regardless of purpose, when [he] is aware that [his] conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when [he] is aware that such circumstances probably exist." R.C. 2901.22(B). "'Coercion means to compel by

pressure, threat, force or threat of force.'" *State v. Walker*, 9th Dist. Wayne No. 10CA0011, 2011-Ohio-517, ¶ 6, quoting *In re Jordan*, 9th Dist. Lorain No. 01CA007804, 2001 WL 1044080, *1 (Sept. 12, 2001).

{¶10} A.M. testified that she and Piatt had a volatile relationship. The two would argue and, at times, each would lash out physically. She described Piatt as controlling, manipulative, and mentally abusive, but acknowledged that she struggled to stay away from him. She indicated that her love for him made ending things difficult for her, as did the fact that he would threaten to hurt himself if she left him or took their son away. A.M. testified that she secured a CPO against Piatt in early 2018 because he was making her fear for her life. Additionally, she described several incidents during which he had harmed her. During one incident, when A.M. was several months pregnant, she became angry with Piatt and struck him several times, bloodying his face. She testified that Piatt threatened to hurt her if she did not leave his house, but she ignored his threats and attempted to walk up the stairs to secure her belongings. Piatt then swept her off her feet and choked her on the floor while she struggled. According to A.M., Piatt released her right before she blacked out, but she never forgot the look on his face as he choked her. She described it as "one of the scariest looks [she had] ever seen" and agreed that the look was burned into her memory.

{¶11} On the day in question, A.M. agreed to meet with Piatt so that he could see their son. The two spent time together in the morning before A.M. dropped off Piatt at home and continued with her day. She testified that they spoke more on the phone throughout the day and had plans to meet again. At about 4:00 p.m., she was driving to his house to meet, but changed her mind and drove past. A.M. testified that she was speaking with someone else on the phone when she realized Piatt was following behind her. She indicated that Piatt was "bumper [to]

bumper" with her and continued to follow her, so she relented and drove back to his house. As soon as she parked, Piatt came to her car, removed their son, and carried him and his car seat inside an RV that Piatt kept parked in his driveway. A.M. described the RV as relatively large, with a front area and back area that included a kitchenette and a bed.

{¶12} A.M. followed Piatt into the R.V. Once inside, they began talking about the status of their relationship, as each of them had recently learned that the other had been unfaithful. A.M. testified that she began apologizing to Piatt for her actions while she removed their son from his car seat and held him. Piatt then tried to kiss her, but A.M. turned away. She testified that Piatt continued to try to engage her and told her "he needed to feel like a man." He exposed his penis and pushed her hand down to it, but she told him no and said she "didn't want to." Piatt then told her, "you're not leaving unless I get it," and she froze. Unsure of what to do, she allowed Piatt to take their son and reiterated that she did not want to do this and just wanted to leave. She testified that Piatt settled their son in his car seat and came to her again. Though she tried to push him away, Piatt pushed her back. A.M. then backed up until she was next to the bed and sat down. According to A.M., Piatt had the same look on his face that he had when he choked her to the point of unconsciousness.

{¶13} A.M. testified that she did not try to fight off Piatt because he was bigger, he was a black belt, and she knew from experience that things would not end well for her if she tried. She continued to tell Piatt no, however, and crossed her legs to try to keep her pants on. Even so, Piatt pushed her back onto the bed, forcibly pulled her pants off, and engaged in sexual intercourse with her. According to A.M., she continued to say no throughout the encounter, but Piatt kept shushing her, telling her he loved her, and indicating he "just need[ed] this," and "just want[ed] to feel like a man." Once Piatt finished having sex with her, A.M. quickly dressed, grabbed her son, and took

him outside. She testified that she was crying and expressed to Piatt that she did not understand how he could do that to her. He then began apologizing and reiterated that he had "just needed to feel like a man." She testified that Piatt was crying when she drove away.

{¶14} In the proceeding days, A.M. and Piatt continued to exchange messages on their cell phones. The State introduced copies of those messages at trial. The messages largely consist of emotionally charged exchanges wherein A.M. repeatedly instructs Piatt to leave her alone and he professes his love and begs her not to keep him away. Three days after the incident, A.M. specifically wrote to Piatt that he "forced [her] to have sex with [him] to feel more like a man" and made her feel "like a worthless junkie whore." Piatt responded: "I can't stop loving you. No matter what. I'm sorry. I wish I could go back in time [and] take away every bad thing that's ever happened to you [and] steal your pain. I love you so much."

{¶15} Piatt argues that his sexual battery conviction is based on insufficient evidence because the State failed to prove that he knowingly coerced A.M. He argues that the only evidence of coercion the State produced was A.M.'s testimony that she had sex with him as a result of a certain look he had in his eye. According to Piatt, a look in one's eye is not a voluntary act. Because he neither acted to coerce A.M., nor acted with the knowledge that she was submitting as a result of some perceived coercion, he argues that the State failed to prove both the actus reus and mens rea elements of his offense.

{¶16} Viewing the evidence in a light most favorable to the prosecution, we must conclude that the State proved, beyond a reasonable doubt, that Piatt knowingly coerced A.M. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. The record does not support Piatt's contention that A.M.'s testimony about the look he had in his eye was the only evidence of coercion the State produced at trial. A.M. specifically testified that she repeatedly told Piatt no,

that she did not want to have sex with him, and that she just wanted to leave. She also testified that she tried to push him away and that she crossed her legs and tried holding them together to prevent him from removing her pants. She stated that Piatt pushed her back, ignored her directives, shushed her, forced her pants off, and said she could not leave until she had sex with him. Moreover, the State produced evidence that he later apologized to A.M. by message when she accused him of forcing her to have sex. A.M.'s testimony and the cell phone messages exchanged between her and Piatt, when viewed in a light most favorable to the State, were sufficient to establish that he knowingly coerced A.M. *See State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 24. As such, Piatt's fifth and seventh assignments of error are overruled.

## Assignment of Error I

**The trial court erred when it admitted evidence of prior acts.**

{¶17} In his first assignment of error, Piatt argues that the trial court erred when it admitted evidence of (1) prior violent acts he allegedly committed against A.M., and (2) a CPO she secured as a result of those acts. He argues that the State failed to notify him of its intent to rely on that evidence. Further, he argues that the evidence was otherwise inadmissible under Evid.R. 404(B). For the reasons that follow, we reject his assignment of error.

{¶18} Pursuant to Evid.R. 404(B),

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

"Proof of one of [the] purposes [outlined in Evid.R. 404(B)] must go to an issue which is material in proving the defendant's guilt for the crime at issue." *State v. Auerswald*, 9th Dist. Medina No.

11CA0053-M, 2013-Ohio-742, ¶ 10. The decision to admit or exclude other acts evidence lies within the sound discretion of the trial court and generally will be reviewed under the abuse of discretion standard. *State v. Jackson*, 9th Dist. Summit No. 28691, 2018-Ohio-1285, ¶ 28. Yet, even if other acts evidence has been improperly admitted, the court's error may be disregarded as harmless if the defendant has not suffered resulting prejudice. *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 25.

{¶19} As noted, A.M. was permitted to testify about prior acts of violence that Piatt committed against her. She also was permitted to testify that she secured a CPO against him because he caused her to fear for her life. Piatt filed a pretrial motion in limine to exclude the foregoing testimony, and the court addressed his motion at the start of trial. It determined that the testimony was admissible because it bore upon A.M.'s state of mind and helped explain why she did not fight back when Piatt sexually assaulted her. Piatt argues that the court erred in its admissibility determination because the victim's state of mind is not relevant to a charge of sexual battery under R.C. 2907.03(A)(1). Further, he argues that the court should have excluded the evidence because (1) the State failed to give him reasonable notice, prior to trial, of its intent to introduce other acts evidence; and (2) the CPO that A.M. secured suffered from service of process issues.

{¶20} We begin by addressing Piatt's arguments about the validity of the CPO and the State's failure to comply with the notice requirements of Evid.R. 404(B). The record reflects that Piatt failed to raise either argument in the lower court. He only challenged the admission of the State's evidence on the basis that it was irrelevant, substantially more prejudicial than probative, and aimed at proving propensity. "This Court has held that, except for a claim of plain error, an appellant may not raise an argument for the first time on appeal." *State v. Robinson*, 9th Dist.

Summit No. 28488, 2017-Ohio-7380, ¶ 12. Moreover, we have repeatedly held that we will not construct a plain error argument on an appellant's behalf. *See State v. Tyler*, 9th Dist. Summit No. 29225, 2019-Ohio-4661, ¶ 27. Because Piatt did not preserve his objection in the lower court or develop a claim of plain error on appeal, his arguments about the validity of the CPO and the State's failure to comply with Evid.R. 404(B)'s notice requirements are not properly before us.

{¶21} In certain instances, other acts evidence may be admissible to help explain a victim's actions in response to a sexual assault. *See State v. Tomlin*, 9th Dist. Lorain No. 96CA006488, 1997 WL 379650, *2 (June 18, 1997). Even assuming the trial court here erred when it admitted the State's other acts evidence, however, Piatt has not explained how its error prejudiced him.[1] *See Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, at ¶ 25. First, the record does not support the conclusion that the offending evidence had a meaningful impact on the verdict. *See id.* at ¶ 33. A.M. admitted that both she *and* Piatt had acted violently toward one another in the past. She described how she had hit him on more than one occasion when she became angry. She also admitted that she routinely disregarded the CPO she obtained because she still wanted to have a relationship with him. The other acts evidence cast both A.M. and Piatt in a negative light. As such, its impact on the verdict is questionable at best.

{¶22} Second, other acts evidence aside, the State presented overwhelming evidence in support of Piatt's conviction. *See id.* at ¶ 33. Piatt did not dispute that he had sex with A.M. The only issue was whether it was consensual or the result of coercion. A.M. described in detail how

---

[1] We would note that the State has urged us to conclude that Piatt forfeited his other acts argument by not renewing his objection to A.M.'s testimony at trial. Yet, "[o]nce the court rules definitely on the record, *either before or at trial*, a party need not renew an objection * * * to preserve a claim of error for appeal." (Emphasis added.) Evid.R. 103(A). The trial court definitely ruled on Piatt's objections to A.M.'s testimony at the start of trial. Thus, it was not necessary for him to renew those objections in order to preserve his argument for appeal. *See id.*

Piatt pushed her down, forcibly removed her pants, and had sex with her while she repeatedly told him no. The State also set forth evidence that Piatt apologized to A.M. in a cell phone message after she accused him of forcing her to have sex with him. Accordingly, the remaining evidence at trial established Piatt's guilt beyond a reasonable doubt. *See State v. Watson*, 9th Dist. Summit No. 25915, 2012-Ohio-1624, ¶ 20-22. His first assignment of error is overruled.

### Assignment of Error II

**The trial court erred when it continued to allow leading questions from the prosecutor throughout the direct examination of the alleged victim.**

{¶23} In his second assignment of error, Piatt argues that the trial court erred when it allowed the prosecutor to use leading questions on A.M.'s direct examination. We reject his argument.

{¶24} "Evid.R. 611(C) permits the use of leading questions where necessary to develop testimony, subject to the sound discretion of the trial court." *State v. Liddle*, 9th Dist. Summit No. 23287, 2007-Ohio-1820, ¶ 30. If a defendant fails to object to a prosecutor's use of leading questions, he forfeits all but plain error review on appeal. *See State v. Bowerman*, 9th Dist. Medina No. 13CA0059-M, 2014-Ohio-4264, ¶ 16. It is incumbent upon an appellant to construct a claim of plain error, as this Court will not develop a plain error argument on an appellant's behalf. *See id.*

{¶25} Piatt argues that the prosecutor "did almost all of the testifying" when questioning A.M. on direct examination. He cites several passages from the transcript in support of his argument. Yet, the record reflects that Piatt did not object to any of the prosecutor's questions in those passages. Because he failed to object, he forfeited his argument that the court erred by allowing the prosecutor to ask leading questions. *See id.* at ¶ 16. Moreover, he has not developed

a claim of plain error on appeal. This Court will not construct an argument on Piatt's behalf. *See id.* Accordingly, his second assignment of error is overruled.

## Assignment of Error IV

**The trial court erred when it applied R.C. 2907.03(A)(1) in an unconstitutional manner.**

## Assignment of Error VI

**Inherent vagueness of laws taking appearance into account. (Sic.)**

{¶26} In his fourth and sixth assignments of error, Piatt argues that R.C. 2907.03(A)(1) is unconstitutionally vague and unconstitutional as applied to him under the facts presented herein. Because he was prosecuted strictly as a result of "'a look' in his eye," Piatt argues, the statute is arbitrary, open to discriminatory application, and vague, as it failed to afford him reasonable notice of its prohibited conduct. For the following reasons, this Court rejects his arguments.

{¶27} "Legislative enactments are afforded a strong presumption of constitutionality." *State v. Smith*, 9th Dist. Wayne No. 15AP0001, 2017-Ohio-359, ¶ 28. "[I]f at all possible, statutes must be construed in conformity with the Ohio and United States Constitutions." *State v. Collier*, 62 Ohio St.3d 267, 269 (1991). "A party asserting that a statute is unconstitutional must prove that the statute is unconstitutional beyond a reasonable doubt." *Smith* at ¶ 28. "The failure to challenge the constitutionality of a statute in the trial court forfeits all but plain error on appeal, and the burden of demonstrating plain error is on the party asserting it." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 2.

{¶28} The record reflects that Piatt never challenged the constitutionality of R.C. 2907.03(A)(1) in the trial court. He, therefore, forfeited his arguments save for a claim of plain error. *See id.* Piatt has not developed a claim of plain error, however, and this Court will not

construct an argument on his behalf. *See State v. Boatright*, 9th Dist. Summit No. 28101, 2017-Ohio-5794, ¶ 8. Accordingly, his fourth and sixth assignments of error are overruled.

### Assignment of Error VIII

**The trial court erred when it convicted Appellant against the manifest weight of the evidence.**

{¶29} In his eighth assignment of error, Piatt argues that his conviction is against the manifest weight of the evidence. We disagree.

{¶30} When considering an argument that a criminal conviction is against the manifest weight standard, this Court is required to

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction[,]" *Thompkins*, 78 Ohio St.3d at 387.

{¶31} A.M. acknowledged that she and Piatt had a sexual relationship before the events herein transpired. She acknowledged that she waited six days to report him to the police and, a few months later, the two resumed a sexual relationship. On cross-examination, she admitted that she sent nude pictures of herself to Piatt on more than one occasion after their relationship resumed. She also admitted that, just five days before testifying, she contacted him to see if he was okay. A.M. testified that she still loved Piatt and always would. When asked to describe their relationship, she likened it to "a drug I'm chasing." Nevertheless, she was adamant that she did

not consent the day Piatt had sex with her in his RV. She maintained that she repeatedly told him no, tried to push him away, and tried to hold her legs together.

{¶32} Piatt presented several witnesses in his defense. The first two witnesses were police officers who spoke with him and A.M. on the day of the incident. At the time, A.M. was driving Piatt and their son around in her car. The officers stopped her vehicle and had a brief exchange with her and Piatt before releasing them. Both officers testified that A.M. and Piatt were calm during the traffic stop. One also said the two "were definitely a couple" and appeared to be together willingly. Even so, neither officer was present several hours later when A.M. met Piatt for a second time and engaged in sexual conduct.

{¶33} The next two witnesses Piatt called in his defense were his former roommate and the roommate's employer. The roommate confirmed that he lived with Piatt during the timeframe relevant to this appeal and allowed him to park his RV in his driveway. The roommate and his employer recalled that they were working at the house one day, hauling appliances, at the same time A.M. and Piatt were there. Both the roommate and his employer recalled seeing A.M. and Piatt go into Piatt's RV. Neither man heard or otherwise noticed anything strange while the two were inside, and neither recalled seeing A.M. upset that day. The employer remembered speaking with her after she and Piatt came out of the RV, and he testified that she seemed fine. Yet, he did not recall seeing a child that day. Further, he admitted that he could not independently recall what the date was when he saw A.M. and Piatt. Only Piatt's roommate testified that their interaction with A.M. and Piatt occurred on the day of the alleged incident. He testified that he learned about A.M.'s sexual assault allegations about two weeks later when the police came to his house. At that point, he recalled a conversation he had with Piatt wherein Piatt told him that he and A.M. had been subjected to a traffic stop the previous day. According to the roommate, he then deduced

that the day of the traffic stop would have been the same day he and his employer were working at his house.

{¶34} Piatt also testified in his own defense. Much like A.M., he testified that their relationship was complicated. He acknowledged that he had filed for custody of their son and she had filed for a CPO, but testified that they still tried to make things work. According to Piatt, he and A.M. had sexual intercourse in his RV multiple times on the day of the alleged assault. He testified that the sex was consensual and, to the extent he later apologized to A.M., he was not apologizing for any assault. He claimed that his apology pertained to other behavior on his part, such as the fact that he had hurt her by sleeping with someone else. He also claimed that, while A.M. had hit him in the past, he had never hit her. He testified that he only put his hands on her a few times to restrain her from injuring him.

{¶35} Piatt argues that the jury lost its way when it convicted him because the evidence presented at trial weighed heavily against his conviction. He asserts that A.M. had a motive to lie, as she accused him of sexually assaulting her after he filed his paternity suit. He also asserts that A.M. did not behave as if she had been victimized in the wake of the alleged assault. He notes that she sent him nude pictures of herself. Further, he notes that she admitted she had sex with a different man the same day that the alleged assault occurred.

{¶36} Having reviewed the record, we cannot conclude that this is the exceptional case where the evidence weighs heavily against Piatt's conviction. *See Otten*, 33 Ohio App.3d at 340. A.M. readily conceded that she and Piatt had a dysfunctional relationship. She explained that she always reconciled with him because she loved him, they shared a child, and he was like a "drug" to her. Although A.M. was forthcoming about the fact that she slept with Piatt after reporting him and sent him nude pictures, she was adamant that she did not consent to sexual intercourse on the

day in question. She described how she repeatedly told Piatt no, tried to push him away, and tried to cross her legs to prevent him from removing her pants. The State also produced a series of cell phone messages between the two, wherein Piatt apologized to A.M. after she accused him of forcing her to have sex. While A.M. admitted that she had sex with another man after the assault, she explained that the man was her extremely close friend and that she went to him directly after the assault because she was so upset. A.M. also became distraught during that portion of her testimony and required a break before she could continue. The jury was free to believe her testimony. *See State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 24. As the trier of fact, the jury was in the best position to judge her credibility, as well as the credibility of the other witness, and to evaluate their testimony accordingly. *See State v. Simmons*, 9th Dist. Lorain No. 18CA011262, 2020-Ohio-614, ¶ 10.

{¶37} "'A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact.'" *State v. Zaree*, 9th Dist. Lorain No. 17CA011111, 2017-Ohio-9081, ¶ 5, quoting *State v. Haydon*, 9th Dist. Summit No. 19094, 1999 WL 1260298, *7 (Dec. 22, 1999). Likewise, "[a] verdict is not against the manifest weight of the evidence because the finder of fact [chose] to believe the State's witnesses rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Upon review, Piatt has not shown that this is the exceptional case where the jury lost its way by convicting him. *See Otten* at 340. Accordingly, his eighth assignment of error is overruled.

## Assignment of Error IX

**Outrageous results violate the 14th Amendment (Sic.)**

{¶38} In his ninth assignment of error, Piatt argues that his conviction offends the Fourteenth Amendment. He baldly asserts, absent any meaningful analysis, that upholding his conviction "would be an outrageous result and would shock the conscience." He also appears to argue that the cumulative effect of his arguments warrants a reversal even if his individual arguments do not. Yet, Piatt has not provided any authority for his blanket statement to that effect.

{¶39} "[T]his Court will not 'guess at undeveloped claims on appeal' or construct arguments to support an assignment of error." *State v. Beverly*, 9th Dist. Summit No. 28627, 2019-Ohio-957, ¶ 6, quoting *McPherson v. Goodyear Tire & Rubber Co.*, 9th Dist. Summit No. 21499, 2003-Ohio-7190, ¶ 31. We have repeatedly held that, "[i]f an argument exists that can support [an] assignment of error, it is not [our] duty to root it out." *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8. Because Piatt's argument herein consists of blanket statements and is devoid of any meaningful analysis or supporting authority, we decline to conduct a merits review. Thus, his ninth assignment of error is overruled.

## Assignment of Error III

**The trial court erred when it did not recuse itself from sentencing Appellant.**

{¶40} In his third assignment of error, Piatt argues that the trial court erred when it failed to recuse itself prior to sentencing. He avers that the court demonstrated bias against him and that its obvious partiality offended his due process rights. Upon review, we reject his argument.

{¶41} The issue of whether a conviction must be vacated due to bias or prejudice on the part of a trial judge is one that lies exclusively within the jurisdiction of the Chief Justice of the Ohio Supreme Court. *See State v. Polke*, 9th Dist. Medina No. 18CA0061-M, 2019-Ohio-904, ¶

7; R.C. 2701.031. This Court lacks authority "to void a trial court's judgment on the basis of personal bias or prejudice on the part of the trial judge * * *." *State v. Hunter*, 151 Ohio App.3d 276, 2002-Ohio-7326, ¶ 18 (9th Dist.), citing *Beer v. Griffith*, 54 Ohio St.2d 440, 441-442 (1978). Nevertheless, we may determine whether conduct on the part of a trial judge denied a criminal defendant due process of law. *See, e.g., State v. Powell*, 9th Dist. Lorain No. 12CA010284, 2017-Ohio-4030, ¶ 8-13. "A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, ¶ 5.

{¶42} Immediately after closing arguments and before issuing the jury its instructions, the trial court addressed Piatt and A.M. outside the presence of the jury. The court informed them that it was "disgusted" with their behavior and warned them to "[c]lean up [their] acts." It noted that they had "a child in the middle of all this" who had been "subjected to way too much already." It further noted that they had routinely flouted a CPO, should have been charged with multiple violations of that order, and had shown "no respect for the law." The court stated that the outcome of the case was ultimately up to the jury, but it felt compelled to caution them against "wasting * * * [its] time having hearings" if they were then unable to abide by the law. Following its pronouncements, the court took a recess and then reconvened the jury to issue its instructions.

{¶43} Piatt argues that the trial court clearly manifested bias and/or prejudice against him during the trial, as evidenced by the foregoing exchange. He further notes that the court later ordered him to serve the maximum sentence for his offense. Because the court was unable to remain impartial, Piatt argues, it ought to have recused itself.

{¶44} The record reflects that Piatt did not ask the trial court to recuse itself or object when it addressed him and A.M. at the conclusion of the trial. After the jury left the courtroom to

begin their deliberations, Piatt did indicate that he wanted to "[r]enew [his] objection for a mistrial." His initial motion for a mistrial does not appear on the record, however, and neither he, nor the court explained why he had sought a mistrial. Moreover, on appeal, Piatt has not challenged the State's representation that he failed to object or otherwise question the trial court's objectivity in the court below.

{¶45} Because Piatt did not object to the trial court's comments or alleged bias during trial, he forfeited those arguments for review. *See State v. Papotto*, 9th Dist. Summit No. 29188, 2019-Ohio-5405, ¶ 8, citing *Powell*, 2017-Ohio-4030, at ¶ 12. He also has not constructed a claim of plain error on appeal, and this Court will not fashion an argument on his behalf. *See Papotto* at ¶ 8; *Powell* at ¶ 12. The comments the trial court made to Piatt and A.M. all occurred outside the presence of the jury, and Piatt has done little to show that the court's frustration with their behavior actually impacted its sentencing decision. Regardless, if he believed the court was prejudiced or had exhibited bias, he had the ability to file an affidavit of disqualification with the Ohio Supreme Court. *See State v. Smetana*, 9th Dist. Lorain No. 12CA010252, 2013-Ohio-2376, ¶ 10. This Court "has no authority to render a decision with regard to disqualification * * * or to void a trial court's judgment on the basis of personal bias or prejudice on the part of the trial judge * * *." *Hunter*, 151 Ohio App.3d 276, 2002-Ohio-7326, at ¶ 18, citing *Beer*, 54 Ohio St.2d at 441-442. Accordingly, Piatt's third assignment of error is overruled.

**Assignment of Error X**

**The Appellant received ineffective assistance of counsel.**

{¶46} In his tenth assignment of error, Piatt argues that he received ineffective assistance of counsel. Specifically, he argues that he was prejudiced when his counsel failed to preserve several of his arguments in the lower court. This Court rejects his argument.

{¶47} To establish ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's performance was deficient, in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus. However, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). This Court "need not address both prongs of the *Strickland* test should it find that [Piatt] failed to prove either." *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

{¶48} Piatt argues that he received ineffective assistance of counsel because his counsel failed to object on several occasions. First, he argues that he was prejudiced when his counsel failed to object to the Evid.R. 404(B) evidence that the State presented at trial. *See* Discussion of Assignment of Error One, *supra*. He asserts that his counsel's motion in limine did not preserve

the issue for appeal and, to the extent she raised arguments in that motion, she failed to address either the State's lack of compliance with Evid.R. 404(B)'s notice provisions or the relevancy of the victim's state of mind to a charge under R.C. 2907.03(A)(1). Second, he argues that his counsel's performance fell below a reasonable standard of competence when she failed to object to the prosecutor's leading questions on A.M.'s direct examination. He acknowledges that her failure to object to those questions, standing alone, did not constitute ineffective assistance of counsel. Even so, he argues that her error, "compounded with the other issues," amounted to ineffective assistance.

{¶49} As previously noted, because the trial court definitively ruled on Piatt's Evid.R. 404(B) objections at the start of trial, it was not necessary for his counsel to renew those objections to preserve his claim of error for appeal. Evid.R. 103(A). This Court rejected the majority of his Evid.R. 404(B) arguments, not because he forfeited them, but because he failed to demonstrate actual prejudice as a result of the admission of A.M.'s testimony about his prior acts of violence. *See Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, at ¶ 25. Because we have already determined that Piatt was not prejudiced by the admission of that testimony, he cannot demonstrate ineffective assistance of counsel as a result of his counsel's failure to object to it. *See Bradley*, 42 Ohio St.3d at paragraph three of the syllabus.

{¶50} Likewise, we must conclude that Piatt cannot demonstrate ineffective assistance of counsel as a result of his counsel's failure to object to the prosecutor's use of leading questions. "This Court has consistently held that trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel." *State v. Smith*, 9th Dist. Wayne No. 12CA0060, 2013-Ohio-3868, ¶ 24, quoting *State v. Guenther*, 9th Dist. Lorain No. 05CA008663, 2006-Ohio-767, ¶ 74. Piatt's counsel may well have made a strategic decision not

to object to the prosecutor's leading questions if she believed that doing so would cause the jury to sympathize with A.M. to a greater degree. Upon review, Piatt has not overcome the strong presumption that his counsel's conduct fell "'within the wide range of reasonable professional assistance * * *.'" *Strickland*, 466 U.S. at 689, quoting *Michel*, 350 U.S. at 101. We, therefore, reject his argument to the contrary. Piatt's tenth assignment of error is overruled.

## III.

**{¶51}** Piatt's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

ERIC E. WILLISON, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.