**[Cite as *State v. Crawford*, 2021-Ohio-1686.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No.    19CA011567 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JERRY CRAWFORD | ELYRIA MUNICIPAL COURT COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.    2018TRD05680 |

DECISION AND JOURNAL ENTRY

Dated: May 17, 2021

CARR, Presiding Judge.

{¶1}  Defendant-Appellant Jerry Crawford appeals from the judgment of the Elyria Municipal Court.  This Court affirms.

I.

{¶2}  Around 11:00 p.m. on July 9, 2018, the vehicle Crawford was driving collided with a vehicle driven by 18-year-old S.K.  No injuries were reported.  As a result of the collision, Crawford was charged with violating R.C. 4511.13(C).  R.C. 4511.13(C)(1)(b) states that, "[e]xcept when a traffic control device is in place prohibiting a turn on red or a steady red arrow signal indication is displayed, vehicular traffic facing a steady circular red signal indication is permitted, after stopping, to enter the intersection to turn right, or to turn left from a one-way street into a one-way street.  The right to proceed with the turn shall be subject to the provisions that are applicable after making a stop at a stop sign."

{¶3} The matter proceeded to a trial before a magistrate. After hearing the evidence, the magistrate issued a written decision recommending that Crawford be found guilty of violating R.C. 4511.13. Crawford filed objections to the magistrate's decision. They included that there remained a reasonable doubt as to whether Crawford violated R.C. 4511.13. After the transcript was filed, Crawford supplemented his objections to include arguments that the finding of guilt was based upon insufficient evidence and against the manifest weight of the evidence.

{¶4} In May 2019, the trial court issued an entry overruling Crawford's objections, finding him guilty, and sentencing him. In October 2019, Crawford filed a motion for leave to file a delayed appeal. This Court granted the motion. Crawford has raised two assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

IN LIGHT OF THE CONFLICTING TESTIMONY, THE LACK OF DRIVING EXPERIENCE OF [S.K.], THE LACK OF EVIDENCE ABOUT THE RESTING PLACE OF THE VEHICLES AND THE LACK OF EVIDENCE ABOUT THE CRASH SCENE DEBRIS, THERE WAS NOT SUFFICIENT EVIDENCE TO CONVICT CRAWFORD.

{¶5} In his first assignment of error, Crawford argues that there was insufficient evidence to support his conviction.

{¶6} "Generally, this Court reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion." *In re L.M.W.*, 9th Dist. Summit No. 29670, 2020-Ohio-6856, ¶ 9, citing *Fields v. Cloyd*, 9th Dist. Summit No. 24150, 2008-Ohio-5232, ¶ 9. However, "[i]n so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18.

**{¶7}** When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus. "Although we conduct de novo review when considering a sufficiency of the evidence challenge, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." (Internal quotations and citation omitted.) *State v. Piatt*, 9th Dist. Wayne No. 19AP0023, 2020-Ohio-1177, ¶ 8.

**{¶8}** R.C. 4511.13(C)(1)(b) states, "[e]xcept when a traffic control device is in place prohibiting a turn on red or a steady red arrow signal indication is displayed, vehicular traffic facing a steady circular red signal indication is permitted, after stopping, to enter the intersection to turn right, or to turn left from a one-way street into a one-way street. The right to proceed with the turn shall be subject to the provisions that are applicable after making a stop at a stop sign." R.C. 4511.43(A) provides in relevant part that, "[a]fter having stopped, the driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection or junction of roadways."

**{¶9}** The main issues in dispute in this matter were which vehicle struck the other and the location of where the accident took place.

{¶10} Around 11:00 p.m. on July 9, 2018, Crawford was driving his wife's car[1] east on Chestnut Ridge Road towards Route 57. Crawford's wife was in the front passenger seat. At the same time, S.K. was driving west on Chestnut Ridge Road, also towards Route 57. S.K.'s younger sister was in the front passenger seat.

{¶11} According to S.K., who was 18 at the time of the accident and had only had her license for a few months, she stopped at the red light at the intersection of Chestnut Ridge Road and Route 57. When there was a green arrow, she then proceeded into the intersection in order to make a left hand turn on to Route 57 south. She told police in her statement that she was going approximately 15 m.p.h. at the time. While in the intersection, and still in the process of turning, S.K.'s vehicle was struck by Crawford's vehicle as he was turning right on to Route 57 south. S.K. averred that, while Crawford should have been in the right lane as he was turning, he turned a bit wide. She admitted to seeing his vehicle but did not stop because she was already turning; although she "tried to swerve out of his lane a little bit[.]"

{¶12} S.K.'s vehicle was damaged in the front passenger bumper, hood, and light areas. S.K. believed that Crawford's vehicle struck hers first with his driver's side mirror and door. She indicated that the mirror snapped off. After S.K. pulled over, Crawford came over to her and told her that he did not see her and that he would tell the officer that it was his fault.

{¶13} While S.K. was driving, S.K.'s sister was playing on her phone. S.K.'s sister confirmed that S.K. stopped at the light and then began to turn left on the green arrow. She indicated that their vehicle was in the process of turning when they were hit by Crawford's vehicle. S.K.'s sister testified that S.K. turned really fast and S.K.'s sister looked over and saw Crawford's

---

[1] For simplicity sake, we will refer to the car as Crawford's even though it was titled in his wife's name.

vehicle coming toward them. S.K.'s sister stated that Crawford came over to their car and said that he did not see them and that he was sorry.

{¶14} While the State sought to also have the trooper testify, he failed to appear in response to the subpoena. The State ultimately sought a continuance, but it was denied.

{¶15} Crawford and his wife testified in Crawford's defense, presenting a different version of events. While Crawford testified to being a professional driver, he did not specify how long he had been one nor did he comment on his driving record. Crawford testified that as he approached the intersection, he stopped at the red light, checked the whole intersection, and then turned right on red. He denied seeing S.K.'s vehicle. Approximately 100 to 150 feet after the intersection, on Route 57, his wife glanced at him and told him to look out. Crawford saw headlights coming slightly towards the driver's side of his vehicle. He grabbed the wheel, jerked it, and swerved off to the right shoulder. He estimated that he was traveling 35 to 38 m.p.h. Despite Crawford's efforts, Crawford's vehicle was still hit. He was able to stop his vehicle within 10 to 15 feet. Crawford maintained that if he had not swerved, "it would have been a T-bone." He confirmed that the accident had to happen with S.K.'s vehicle at somewhat of an angle despite the fact that the portion of Route 57 that he asserted they were traveling at the time was straight. Crawford also testified that there was a lack of lane markings in the area of the intersection, which he believed may have contributed to S.K. hitting his vehicle.

{¶16} When Crawford and his Wife walked over to S.K.'s vehicle, he noticed S.K.'s sister in the car playing a game and that there was "a dome light in her lap."

{¶17} The day after the accident, they went back to the scene and located his mirror and bracket between 100 and 150 feet from the intersection. That day, Crawford also took photos of his car to depict the damage. While the photos were admitted as exhibits, they were not filed in

the trial court and are not a part of this Court's record on appeal. Nonetheless, Crawford described the damage at trial. He indicated that the damage started at the rear drivers' wheel well and went forward to the driver's side mirror.

{¶18} Crawford's wife testified similarly to Crawford. She indicated that Crawford made a right turn and went 100 to 150 feet when she looked up to talk to Crawford and saw a headlight coming toward the back of their car. So, she told Crawford to pull up to the right lane because someone was going to hit them. Then Crawford's vehicle was struck. She indicated that the collision did not happen at the intersection.

{¶19} We cannot say that the trial court erred in overruling Crawford's objection to the magistrate's decision based upon the sufficiency of the evidence. As noted above, when reviewing the sufficiency of the evidence, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses[.]" (Internal quotations and citations omitted.) *Piatt*, 2020-Ohio-1177, at ¶ 8. Instead, we are required to view the evidence in a light most favorable to the prosecution. *Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus. If that evidence is believed, we then ask whether it would convince the average mind of the defendant's guilt beyond a reasonable doubt. *Id.*

{¶20} Here, both S.K. and her sister testified that Crawford's vehicle struck S.K.'s vehicle in the intersection while S.K. was still turning left on a green arrow. It is undisputed that Crawford was turning right on red. S.K. also testified that, at the scene of the accident, Crawford told her he was going to tell the police that it was his fault. He also acknowledged not seeing her vehicle. While S.K.'s sister did not mention fault in her testimony, she did state that Crawford apologized, which could be viewed as evidence of consciousness of guilt and guilt itself. *See State v. Wrasman*, 3d Dist. Auglaize No. 2-20-03, 2020-Ohio-6887, ¶ 27. In addition, S.K.'s vehicle was damaged

on the front passenger side and Crawford's vehicle was damaged along the driver's side, which could be viewed as being consistent with S.K.'s version of events.

{¶21} Crawford's argument on appeal focuses largely on issues of credibility and conflicting evidence; issues that are not appropriately resolved in a sufficiency challenge. *See Piatt* at ¶ 8. While Crawford argues that there was no physical evidence found at the scene to support S.K.'s version of events and that the evidence he found supports his version, Crawford has pointed to no authority that requires the presentation of physical evidence to uphold a conviction based upon a traffic violation. *See State v. Garcia-Toro*, 8th Dist. Cuyahoga No. 107940, 2019-Ohio-5336, ¶ 49 ("Neither physical evidence nor eyewitness testimony is required to establish a defendant's guilt beyond a reasonable doubt. Ohio courts have consistently held that a defendant may be convicted solely on the basis of circumstantial evidence."). Notably, the evidence Crawford recovered was found the next day. Thus, this physical evidence is far from conclusive – there is no evidence as to where that debris was at the time of the accident.

{¶22} Given the record before this Court and the arguments on appeal, we cannot say that the trial court erred in overruling Crawford's objection based upon the sufficiency of the evidence.

{¶23} Crawford's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL DID NOT ESTABLISH PROOF BEYOND A REASONABLE DOUBT THAT CRAWFORD WAS AT FAULT IN THE ACCIDENT AT BAR. DUE TO CONFLICTING TESTIMONY, THE LACK OF DRIVING EXPERIENCE OF [S.K.], THE TIME OF DAY, LACK OF LIGHTING, LACK OF ADEQUATE ROAD MARKINGS, SUCH AS DIVIDER LINES, THE LACK OF EVIDENCE ABOUT CRASH SCENE DEBRIS AND LACK OF EVIDENCE ABOUT THE FINAL RESTING PLACE OF THE VEHICLES, THERE WAS NOT PROOF BEYOND A REASONABLE DOUBT THAT CRAWFORD WAS AT FAULT IN THE ACCIDENT AT BAR.

{¶24} Crawford argues in his second assignment of error that his conviction was against the manifest weight of the evidence.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶25} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340. "[W]e are mindful that the jury is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Gannon*, 9th Dist. Medina No. 19CA0053-M, 2020-Ohio-3075, ¶ 20. "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Id.*

{¶26} Here, the record is clear that neither the magistrate nor the trial court found Crawford's testimony that the accident occurred 100 to 150 feet from the intersection credible. In fact, the trial court described Crawford's contention "that he had safely made his turn and was traveling 35-38 mph approximately 150 feet south of the intersection when [S.K.] hit him" as "incredible[.]" After a thorough and independent review of the record before us, we cannot say that the trial court erred in overruling Crawford's objection or that the trier of fact lost its way and created a manifest miscarriage of justice.

{¶27} Crawford points to S.K.'s statement that she tried to swerve out of Crawford's lane and her sister's testimony that S.K. made the turn really fast as evidence that the verdict should be overturned. With respect to S.K.'s statement, shortly after she made it, she then testified that Crawford's turn was a little wide, which could have explained her reference to being in his lane. Irrespective, S.K. testified repeatedly that the accident occurred in the intersection while she had a green arrow to turn left. As to S.K.'s sister's statement that S.K. made the turn really fast, the trial court noted that, because S.K.'s sister was playing a game on her phone and not paying complete attention, that could have distorted her sense of speed. Further, S.K.'s sister's testimony was also clear that Crawford hit S.K.'s car and that the accident happened in the intersection.

{¶28} Thus, this case came largely down to a matter of credibility. In finding S.K.'s version of events more credible, the trial court, in part, relied on some of Crawford's own testimony. The trial court noted that Crawford referred to the accident almost being a "T-bone[,]" which the trial court interpreted as meaning the vehicles almost hit at right angles. The trial court concluded such a scenario would be much more likely while the cars were turning towards each other in the intersection, as opposed to driving down a straight section of road. We cannot say that the trial court's conclusions are against the weight of the evidence or that the trial court erred in overruling Crawford's objection.

{¶29} Crawford's second assignment of error is overruled.

III.

{¶30} Crawford's assignments of error are overruled. The judgment of the Elyria Municipal Court is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Elyria Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

TEODOSIO, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

KENNETH N. ORTNER, Attorney at Law, for Appellant.

BRANDON G. OLIVER, Prosecuting Attorney, for Appellee.