[Cite as *Meilen v. Meilen*, 2013-Ohio-4883.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Hilary K. Meilen, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 13AP-66 |
| v. | : | (C.P.C. No. 04DR-06-2540) |
| Robert A. Meilen, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 5, 2013

*Babbitt & Weis LLP*, *Gerald J. Babbitt* and *C. Gustav Dahlberg*, for appellee.

*Isaac, Brant, Ledman & Teetor, LLP*, *Frederick M. Isaac*, *Christopher J. Geer* and *Joanne S. Peters*, for appellant.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

KLATT, P.J.

{¶ 1} Defendant-appellant, Robert A. Meilen, appeals a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, that modified the monthly amount of spousal support owed to plaintiff-appellee, Hilary K. Meilen. For the following reasons, we affirm in part and reverse in part.

{¶ 2} The trial court granted the parties a divorce in a March 6, 2007 judgment. During their 19-year marriage, the parties had four children, three of whom were minors at the time of the divorce. Hilary stayed home to care for the children, while Robert

worked in the information technology field.  Robert became very successful in his career, which allowed the family to enjoy a high standard of living.

{¶ 3}   At the time of the divorce, Robert was employed by TSA Corporate Services, Inc. ("Sports Authority") as its chief information officer.  Robert's yearly salary was $399,000.  Hilary was not employed, but had an earning capacity of $18,000 to $20,000 per year.

{¶ 4}   In May or June of 2003, Hilary was diagnosed with breast cancer.  She underwent multiple surgeries and aggressive chemotherapy.  By February 2005, Hilary showed no signs of cancer.  However, at the time of the divorce, Hilary continued to take anti-cancer medication.  While undergoing cancer treatment, Hilary was covered by health insurance obtained through Robert's employer.  Hilary expected to pay high premiums in order to secure her own health insurance, if she could obtain any at all.

{¶ 5}   In the divorce decree, the trial court awarded Hilary spousal support in the amount of $12,000 per month, plus a processing charge.  Additionally, the trial court ordered Robert to pay Hilary 30 percent of any yearly bonuses that he received.  The trial court determined that Robert's obligation to pay Hilary a percentage of his yearly bonus would terminate on December 31, 2016, but the trial court did not set a termination date for the monthly spousal support payment.  All spousal support would terminate on the death of either party or Hilary's re-marriage.  The trial court retained jurisdiction to modify or terminate the spousal support.

{¶ 6}   In April 2011, Sports Authority terminated Robert's employment without cause.  Given the depressed state of the job market in Robert's field, Robert anticipated that he would have difficulty obtaining a new job, much less a job with a salary commensurate to his Sports Authority salary.  Robert, therefore, moved to modify or terminate his spousal support obligation on April 12, 2011.

{¶ 7}   At a trial before a magistrate, Robert requested (1) a reduction of his monthly spousal support obligation to $6,000, and (2) the establishment of a date on which the monthly spousal support payments would terminate.  In response, Hilary argued that no substantial change in circumstances occurred, so the trial court lacked

jurisdiction to modify or terminate the spousal support award.[1]  Alternatively, Hilary contended that, if the court found a substantial change in circumstances, the existing $12,000 per month award remained reasonable and appropriate.  Hilary also asserted that the trial court should deny Robert's request to set a date for the termination of spousal support.

{¶ 8}  During the March 2012 trial, Robert testified regarding his discharge from Sports Authority and his new job as chief information officer for Hunter Douglas, Inc.  Sports Authority paid Robert his salary until May 5, 2011.  Robert started his new job with Hunter Douglas on June 13, 2011.  During 2011, Robert's yearly salary from Hunter Douglas was $260,000.  Robert received a $10,000 raise on January 1, 2012, making his 2012 yearly salary $270,000.  Even with this raise, Robert earned over $100,000 less per year than he earned at Sports Authority.

{¶ 9}  Robert's employment contract with Sports Authority had required Sports Authority to pay Robert one year's salary in the event that his employment was terminated without cause.  Pursuant to that contract and in compensation for Robert's execution of an expanded non-compete agreement, Sports Authority paid Robert $519,347 and transferred to him title to his company vehicle.  Robert received the payment and vehicle in May 2011.  Combining the severance payment with Robert's ordinary income (including bonuses), Robert earned a total of $1,074,859.90 in 2011.

{¶ 10} Like Robert, Hilary also began a new job after the divorce.  In August or September of 2008, Hilary began employment with the New Albany-Plain Local School District.  Hilary's 2011 salary was $17,541.  Hilary had obtained health insurance through her employer at a cost of $40 per month.  Fortunately, Hilary remained cancer free and no longer needed anti-cancer medication.

{¶ 11} In his decision, the magistrate found that the termination of Robert's employment with Sports Authority and his acceptance of a new, lower-paying job with Hunter Douglas constituted a substantial change in circumstances.  The magistrate, therefore, concluded that the trial court had jurisdiction to modify the spousal support

---

[1] As we will explain below, a trial court lacks jurisdiction to modify a previously entered spousal support award unless the court retained jurisdiction to modify the support in the original divorce decree, and the court determines that a substantial change in circumstances has occurred since the divorce.  R.C. 3105.18(E) and (F).

award. After considering the R.C. 3105.18(C) factors, the magistrate recommended that (1) the trial court increase the monthly spousal support payment to $19,000 effective April 12, 2011, and (2) the trial court decrease the monthly spousal support payment to $8,000 effective January 1, 2012. Thus, for the eight-and-one-half month period between April 12 and December 31, 2011, Robert would have to pay Hilary $7,000 more a month than the original $12,000 award. Thereafter, Robert would pay Hilary $4,000 less per month.

{¶ 12} Both Robert and Hilary objected to the magistrate's decision. In relevant part, Robert argued that an increase of spousal support, in the absence of any request to do so, was unsupported by law and reversible error. Robert also asserted that the magistrate erred by not setting a termination date for the monthly spousal support payments. In a December 27, 2012 judgment, the trial court overruled all the objections and adopted the magistrate's decision.

{¶ 13} Robert now appeals the December 27, 2012 judgment, and he assigns the following errors:

> [1.] After finding a substantial change of circumstances not contemplated by the parties at the time of their divorce, including a reduction in Defendant-Appellant's income and earning ability, the trial court erred by increasing Defendant-Appellant's spousal support obligation from $12,000 to $19,000 per month from April 12, 2011 to December 31, 2011 in the absence of any written motion or notice to the parties that it intended to do so.
>
> [2.] The trial court erred by refusing to establish a termination date for spousal support.

{¶ 14} By his first assignment of error, Robert argues that the trial court erred when it increased the amount he had to pay in monthly spousal support. Robert sets forth two reasons for this error: (1) the trial court lacked either the subject-matter or personal jurisdiction necessary to enter the judgment, and (2) the judgment contravened his due process right to know the scope of the proceedings and have an opportunity to present evidence on all issues within that scope. We reject the former argument, but we accept the latter.

{¶ 15} Robert first argues that the trial court lacked subject-matter jurisdiction to increase the spousal support award because Hilary did not request an increase. To support his argument, Robert relies on R.C. 3105.18(B), which states that, "[i]n divorce * * * proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party." Robert, however, is looking to the wrong statutory provision. R.C. 3105.18(B) applies to the initial divorce proceedings, wherein a request for spousal support triggers the trial court's duty to determine, in the first instance, whether spousal support is appropriate and reasonable. *See, e.g., Alexander v. Alexander*, 10th Dist. No. 09AP-262, 2009-Ohio-5856, ¶ 31-33; *Grody v. Grody*, 10th Dist. No. 07AP-690, 2008-Ohio-4682, ¶ 25-28. Here, the initial divorce proceedings are over; the trial court complied with R.C. 3105.18(B) when it ordered spousal support in the March 6, 2007 divorce decree.

{¶ 16} After a divorce decree becomes final, R.C. 3105.18(E) determines whether a trial court has the jurisdiction to revisit and modify a prior order of spousal support. *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222. According to R.C. 3105.18(E), that jurisdiction hinges upon whether: (1) "the court determines that the circumstances of either party have changed," and (2) "the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of * * * spousal support." Robert does not dispute that, here, both of those criteria are satisfied. Thus, we conclude that the trial court possessed the subject-matter jurisdiction necessary to enter judgment modifying the spousal support order.

{¶ 17} Next, Robert argues that the trial court lacked jurisdiction to increase the spousal support award because Hilary did not invoke the trial court's continuing jurisdiction pursuant to Civ.R. 75(J). According to Civ.R. 75(J), "[t]he continuing jurisdiction of the court shall be invoked by motion filed in the original action, notice of which shall be served in the manner provided for the service of process under Civ.R. 4 to 4.6." Ordinarily, failure to serve a non-moving party pursuant to Civ.R. 75(J) deprives the trial court of personal jurisdiction over that party. *Fisher v. Fisher*, 10th Dist. No. 01AP-1041, 2002-Ohio-3086, ¶ 33. Here, however, the trial court did not need to acquire

personal jurisdiction over Robert through service because it already had personal jurisdiction over him by virtue of his motion. When Robert moved for a modification of the spousal support award and served Hilary, he properly invoked the trial court's continuing jurisdiction to modify the spousal support award. The trial court then had personal jurisdiction over both Robert and Hilary, and thus, the judgment modifying the spousal support award bound both parties.

{¶ 18} Robert's final argument succeeds where his first two did not. In his final argument, Robert contends that the trial court violated his due process rights by increasing the monthly spousal support amount when Hilary had not requested that relief. We agree.

{¶ 19} As Robert points out, the primary issue litigated at trial was whether a *decrease* of spousal support was reasonable and appropriate. Robert argued in favor of a decrease and Hilary against. Unlike Robert, Hilary did not move for a modification of the spousal support award. Moreover, at no point prior to trial, during her opening statement, or in her closing argument, did Hilary advocate for an increase of spousal support. Rather, Hilary merely asserted that the trial court should maintain the amount of spousal support awarded in the divorce decree.

{¶ 20} We find this case similar in many respects to *Fisher v. Fisher*, 5th Dist. No. 2008 CA 00049, 2009-Ohio-4739. There, the ex-husband moved to modify or terminate spousal support. Soon thereafter, the ex-wife filed a motion for contempt alleging that the ex-husband had failed to pay for her health insurance as the divorce decree had ordered. The trial court denied the ex-husband's motion but granted the wife's motion. Although the ex-wife had not requested an increase in spousal support, the trial court ordered the ex-husband to pay an extra $160 per month in spousal support to compensate the ex-wife for her increased health insurance costs. On appeal, the ex-husband argued that the trial court erred by increasing the monthly spousal support amount. The Fifth District Court of Appeals agreed. The court held that the trial court could not order an increase in spousal support when the wife had not moved for such relief and the issue was not tried by the express or implied consent of the parties. *Id.* at ¶ 54.

{¶ 21} The *Fisher* court relied on Civ.R. 15(B) to reach its holding. Here, the parties also cite to Civ.R. 15(B) as the determinative law. Civ.R. 15(B) implements the

axiomatic rule "that cases are to be decided on the issues actually litigated at trial." *State ex rel. Evans v. Bainbridge Twp. Trustees*, 5 Ohio St.3d 41, 44 (1983). Pursuant to Civ.R. 15(B):

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues.

{¶ 22} Although Civ.R. 15(B) refers to pleadings, not motions, we find it applicable to this case. Generally, the Ohio Rules of Civil Procedure govern divorce actions, Civ.R. 75(A), and nothing in Civ.R. 75 specifically exempts divorce actions from the application of Civ.R. 15(B). Moreover, a motion invoking a domestic relations court's continuing jurisdiction operates much like a complaint. When a party files such a motion, it must serve the motion as if it was a complaint. Civ.R. 75(J). Like a complaint, the motion notifies the non-moving party and the domestic relations court of the issues the moving party seeks to resolve. Civ.R. 15(B), therefore, determines when the scope of the motion must expand to include issues not raised in the motion.

{¶ 23} Here, Hilary acknowledges that she did not put the issue of increased spousal support before the court by filing her own motion to modify. However, Hilary argues that the increase issue was tried by implied consent. Hilary cites as evidence of Robert's implied consent the fact that Robert did not argue that the trial court could *only* reduce the amount of spousal support. Hilary also points to her argument that the high amount of Robert's 2011 income militated against any change in the original monthly spousal support amount. According to Hilary, this argument implicitly urged the trial court to take Robert's severance payment into account when making an award of spousal support.

{¶ 24} Neither of Hilary's arguments establishes implied consent. To determine whether the parties impliedly consented to litigate an issue, courts consider whether the parties recognized that an unpleaded issue entered the case. *Evans* at 45-46. "Under Civ.R. 15(B), implied consent is not established merely because evidence bearing directly

on an unpleaded issue is introduced without objection. Rather, it must appear that the parties understood the evidence was aimed at the unpleaded issue." *Id.* at 46. This limitation protects the parties' due process right "to know what is being tried, or at least to [have] the means to find out." *Jimenez v. Tuna Vessel "Granada,"* 652 F.2d 415, 420 (5th Cir.1981); *accord Carlisle Equip. Co. v. United States Secy. of Labor & Occupational Safety*, 24 F.3d 790, 795 (6th Cir.1994) (where notice that a new issue was entering the case was inadequate, the appellant's due process rights were violated).[2] "A party must have actual or constructive knowledge of the scope of proceedings, as well as an adequate opportunity to present evidence on all issues embraced therein, before being deemed to have implicitly consented to litigate matters outside the pleadings and pre-trial order." *United States v. Texas*, 523 F.Supp. 703, 722 (E.D.Tex.1981). Thus, due to the requirements of procedural due process, trial of unpleaded issues by implied consent is not lightly inferred. *Grand Light & Supply Co., Inc. v. Honeywell, Inc.*, 771 F.2d 672, 681 (2d Cir.1985); *accord Deere & Co. v. Johnson*, 271 F.3d 613, 622 (5th Cir.2001) (" '[I]t is not often that amendments are allowed after the close of evidence, since the opposing party may be deprived of a fair opportunity to defend and offer any additional evidence.' ").

{¶ 25} Here, Hilary cites to nothing that indicates that either she or Robert recognized that the increase issue was in play at trial. According to Hilary, this court can find implied consent in Robert's failure to announce that the parties were not litigating the question of increased spousal support. Robert, however, had no reason to make such an announcement because Hilary neither filed her own motion to modify nor argued, either explicitly or implicitly, that the monthly spousal support award should be increased. If we were to accept Hilary's argument, a moving party would have to list all issues not before the court or risk a finding that that party impliedly consented to trial on those issues. This is not the law. Because the evidence establishes that neither party understood the trial to include the increase issue, no implied consent to litigation of that issue arose.

---

[2] The relevant portion of Civ.R. 15(B) is similar to Fed.R.Civ.P. 15(b)(2). Consequently, like the Supreme Court of Ohio did in *Evans*, we look to federal precedent construing Fed.R.Civ.P. 15(b) to interpret Civ.R. 15(B).

{¶ 26} As we stated above, "cases are to be decided on the issues actually litigated at trial." *Evans* at 44. Here, the only motion before the court was Robert's motion. Robert undisputedly requested a decrease in spousal support. Thus, the issue before the trial court was whether to grant or deny a decrease in spousal support. The trial court could not grant any relief beyond that requested by Robert in the absence of notice to the parties that such relief might be granted and an opportunity for the parties to present argument and evidence regarding such relief. *See Bellamy v. Bellamy*, 110 Ohio App.3d 576, 580-81 (6th Dist.1996) (due process precluded the trial court from modifying child support when the only motion before the court was a motion for contempt); *Wright v. Wright*, 9th Dist. No. 13526 (Nov. 9, 1988) (due process prevented the trial court from decreasing child support when the only motion before the court was a motion for a judgment awarding the ex-wife the amount of child support in arrears). As Robert did not receive that notice and opportunity, the trial court erred in ordering an increase in the monthly spousal support award. Accordingly, we sustain Robert's first assignment of error.

{¶ 27} By Robert's second assignment of error, he argues that the trial court abused its discretion in refusing to set a date on which he could stop making monthly spousal support payments. We disagree.

{¶ 28} Under the general rule regarding duration of spousal support, "where a payee spouse has the resources, ability and potential to be self-supporting, an award of [spousal support] should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities." *Kunkle v. Kunkle*, 51 Ohio St.3d 64 (1990), paragraph one of the syllabus. However, this general rule does not typically apply in cases of marriages of long duration, to parties of advanced ages, or to homemaker-spouses with little opportunity to develop meaningful employment outside the home. *Id.* Although there is no bright-line rule to determine how long a marriage must last in order to qualify as a long-term marriage, courts have entered spousal support awards of unlimited duration only for marriages of 19 years or longer. *DiBari v. DiBari*, 10th Dist. No. 08AP-1050, 2009-Ohio-3437, ¶ 14; *MacMurray v. Mayo*, 10th Dist. No. 07AP-38, 2007-Ohio-6998, ¶ 9.

{¶ 29} Here, the parties were married 19 years.  Hilary was a homemaker-spouse who has, in recent years, developed employment outside the house.  However, Hilary's employment will not allow her to attain a standard of living comparable to that which the parties had when married.  Under similar circumstances, this court has previously determined that a spousal support of indefinite duration is not an abuse of discretion. *Ehni v. Ehni*, 10th Dist. No. 94APF10-1530 (Apr. 25, 1995); *Addy v. Addy*, 97 Ohio App.3d 204, 209-10 (10th Dist.1994); *Frye v. Frye*, 93APF09-1218 (Mar. 31, 1994); *Schmidt v. Schmidt*, 10th Dist. No. 91AP-547 (Oct. 8, 1991).  Consequently, we find no abuse of discretion in the trial court's failure to set a termination date for Hilary's spousal support.  We thus overrule the second assignment of error.

{¶ 30} For the foregoing reasons, we sustain Robert's first assignment of error and overrule Robert's second assignment of error.  We affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.  We remand this cause to that court so that it may enter judgment in accordance with this decision.

*Judgment affirmed in part; reversed in part;*
*cause remanded with instructions.*

SADLER and McCORMAC, JJ., concur.

McCORMAC, J., retired, of the Tenth Appellate District,
assigned to active duty under authority of Ohio Constitution,
Article IV, Section 6(C).