[Cite as *In re J.Q.-P*, 2024-Ohio-661.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE J.Q.-P. | : | |
| A Minor Child | : | No. 112618 |
| [Appeal by B.P., Father] | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 22, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. FA18107682

---

***Appearances:***

Nathaniel E. Wilkinson, *for appellant*.

S.Q., *pro se.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Father-appellant, B.P. ("Father"), appeals from the juvenile court's judgment entry following an evidentiary hearing on motions related to Father's parenting time with, and support obligations for, his daughter, J.Q.-P. Father contends that the juvenile court erred in (1) denying his motion to amend his pleadings to conform to the evidence pursuant to Civ.R. 15(B) and (2) dismissing his motion to modify custody of J.Q.-P.

{¶ 2} For the reasons that follow, we affirm the judgment of the juvenile court.

**Procedural and Factual Background**

{¶ 3} J.Q.-P. was born on December 11, 2016. Father's paternity was established on March 10, 2017. An administrative order for child support and medical support was entered on May 24, 2017. On June 15, 2018, Father filed an application to establish a shared parenting plan in the Cuyahoga County Court of Common Pleas, Juvenile Division (the "juvenile court"). On May 28, 2019, the juvenile court denied Father's application for a shared parenting plan and entered an order designating Mother as the residential and custodial parent of J.Q.-P. and granting Father parenting time.

{¶ 4} On September 13, 2019, Mother filed (1) a motion to modify parenting time and support and (2) an emergency motion to terminate visitation. Mother alleged that Father had physically and/or sexually abused J.Q.-P., that Father had failed to provide adequate nutrition for J.Q.-P. and had otherwise failed to meet her basic needs during his parenting time and that J.Q.-P. had demonstrated unexplained "psychological changes" and harmful "self-inflicting behavior" following visits with Father. The juvenile court appointed a guardian litem to conduct an investigation and make a recommendation.

{¶ 5} On September 30, 2019, Father filed a motion to show cause, requesting that Mother be required to show cause why she should not be held in contempt for interfering with his court-ordered parenting time with J.Q.-P. Father

alleged that Mother had denied him visitation since September 12, 2019. On October 30, 2019, Father filed an amended motion to show cause, alleging that Mother had continued to deny him court-ordered visitation throughout October 2019.

{¶ 6} On November 19, 2019, Mother filed a motion to show cause, requesting that Father be held in contempt for failing to pay for certain medical expenses incurred on behalf of J.Q.-P.

{¶ 7} On November 25, 2019, an evidentiary hearing was held on Mother's emergency motion to terminate Father's visitation. A magistrate denied the motion but ordered that Father's parenting time be supervised pending further investigation.

{¶ 8} On December 12, 2019, Mother filed an amended motion to show cause, providing further support for her claim that Father had failed pay certain medical expenses incurred on behalf of J.Q.-P. and alleging that Father had failed to timely make child support payments.

{¶ 9} An evidentiary hearing on the pending motions was originally scheduled for June 2020 but was continued due to issues related to the COVID-19 pandemic. Numerous continuances followed due to scheduling issues and/or as the parties engaged in settlement discussions in an attempt resolve the matter.

{¶ 10} Following a conference conducted on April 27, 2021, the magistrate entered an order indicating that, through their negotiations, the parties had reached "substantial agreement in the matter" but were "not in agreement as to the issue of

which parent will be designated as residential parent for school purposes" and that "[t]he matter should be set for trial on the remaining issue of which parent shall be designated residential parent for school purposes." The matter was then assigned a July 2021 trial date.

{¶ 11} On May 4, 2021, the parties agreed that Father's parenting time would no longer be supervised and the juvenile court adopted the parties' agreement. Following a conference on May 27, 2021, the magistrate entered an order indicating that the parties were "coming to an agreement" that they anticipated would "encompass all custody and support matters."

{¶ 12} In June 2021, Mother's counsel was granted leave to withdraw. Mother then proceeded pro se. Shortly thereafter, the July 2021 trial was cancelled, and the case was transferred to a visiting judge. The assigned visiting judge passed away before the matter could be heard and the case was transferred to a new visiting judge.

{¶ 13} Following a pretrial conference on January 27, 2022, an evidentiary hearing was scheduled for April 26 and 27, 2022. In its journal entry summarizing the conference, the juvenile court stated:

> For any modification of the May 28, 2019 Journal Entry, the moving parties must show that there was a "change of circumstances" and that the proposed modification is in the "best interest of the child."

> The parties indicated the only issue before the Court is: Legal Custodian[;] Residential Parent for School Purposes; Child Support; and Medical Payments and Deductibles.

**{¶ 14}** Once again, the evidentiary hearing was continued. The evidentiary hearing finally commenced on September 20, 2022.

**The Evidentiary Hearing**

**{¶ 15}** The transcript reveals that at the outset of the hearing, there was confusion as to what motions were to be addressed at the hearing. After some discussion on the issue, which apparently left the juvenile court with the impression that Father had filed a motion to modify the May 28, 2019 judgment entry, the juvenile court indicated, "[W]e're ready to proceed in regards to evidence and testimony in regards to the issue of whether there should be a modification of the Court's last order in regards to residential parent. * * * So the obligation is on the father at this point in time on the Motion to Modify." Although Father had not, in fact, filed a "motion to modify," no one corrected the juvenile court.

**{¶ 16}** Mother proceeded with her case-in-chief, presenting testimony from J.Q.-P.'s pediatrician, a social worker for the Cuyahoga County Division of Children and Family Services, Father by cross-examination and her own narrative direct examination. Father was the sole witness to testify on his behalf.

**{¶ 17}** In the middle of Father's testimony, the juvenile court realized that Father had not, in fact, filed a motion to modify custody. The following exchange occurred:

> THE COURT: * * * You've asked for a change or modification. When was that motion filed?
>
> [FATHER'S COUNSEL]: The Court has been interpreting the mother's motion as a full modification.

We never actually filed a Motion to Modify, but that's been — every since I was retained about mid-2019, that's how this Court —

THE COURT: Yeah. I didn't see it either, so that's kind of tricky to modify custody.

First you have to have a change of circumstance, but then you have to have the best interest, but there's no motion.

[MOTHER]: I agree with that. There is not.

THE COURT: So on what basis can I grant your request now?

[FATHER'S COUNSEL]: Obviously, this case has been pending for a very long time and mother has had notice of father's intention to change parenting time.

(Inaudible) we've been negotiating back and forth and due to the close proximity of mother's emergency motion before [the magistrate] had been treating the entire — basically (inaudible).

So the Guardian ad Litem's report is —

THE COURT: Obviously he understood that too. But nevertheless, there's no motion for modification unless you know of one. * * * The only Motion for Modification was that of the mother. Okay. I'll let you proceed and we'll sort it out,

{¶ 18} Father continued with his testimony. At the conclusion of his testimony, Father made an oral motion to modify parenting time and custody. The juvenile court responded: "Sometimes we'll grant a motion to allow you to make a motion to conform with the evidence or file a pleading to conform with the evidence, but I don't think this is an appropriate case for that." At the conclusion of the first day of the hearing, the juvenile court, once again, addressed the issue of Father's unfiled motion:

THE COURT: * * * In regards to your motion for modification of custody and/or the motion to reflect the evidence or to conform with the evidence presented, I'm gonna consider it, so if you have something to write and file, you need to do so tonight. * * * I haven't ruled on it. * * * I'll consider it at that time.

{¶ 19} The next morning, Father filed (1) a motion to amend his pleadings to conform to the evidence pursuant to Civ.R. 15(B) and (2) a motion to modify custody.

{¶ 20} In his motion to amend his pleadings, Father argued that the parties had "expressly and impliedly consented to try the matter of custody" at the January 27, 2022 pretrial conference, that all parties had been "operating under the understanding that custody was at issue * * * and had been doing so for many months" and that Mother had "more than a fair opportunity to address the issue," given that her "witnesses and exhibits bore directly on the issue of custody." Father also noted that the guardian ad litem had recommended a change in custodial status. Father did not, however, identify what "pleading" he sought leave to amend or, specifically, what amendments he sought leave to make.

{¶ 21} In his motion to modify custody, Father requested that he be designated the legal custodian and residential parent of J.Q.-P. or, in the alternative, that Father be named the residential parent for school purposes, be given authority to make medical decisions for J.Q.-P., have approximately equal parenting time with J.Q.-P. and that child support be adjusted accordingly. In support of his motion, Father asserted that "there has been a significant change in circumstances since the last order of this court."

**{¶ 22}** After receiving Father's motions, the juvenile court indicated that it would "not rule upon [Father's motions] directly" but that it would "take [them] under advisement" and "may or may not grant them." The evidentiary hearing then continued.

## Recommendation of the Guardian Ad Litem

**{¶ 23}** On September 14, 2022, the guardian ad litem filed a report in which he recommend that "due to a significant change in circumstances," the juvenile court "issue an order for shared parenting with a relatively equal allocation of parenting time," that Father be given the right "to make all medical and school-related decisions" for J.Q.-P. and that Father be designated the residential parent for school purposes. The guardian ad litem further stated that "should the Court decide that it is in [J.Q.-P.'s] best interest that she be placed in Father's exclusive custodial and residential care," he would "endorse that." The guardian ad litem explained that his recommendation was based on the fact that although there was "little to no basis in fact for her accusations" of abuse, Mother "continue[d] to push the narrative of abuse when interacting with involved professionals including the child's school." He indicated that Mother's continued accusations, "without [Mother's] willingness to seek help or acknowledge a problem, foretells a potentially dangerous future that would not be in [J.Q.-P.'s] best interest" and that although Mother had for years claimed that J.Q.-P.'s issues were attributable to Father, "it is abundantly clear that she is[,] in fact, the primary source of the distress." At the hearing, the guardian ad

litem described his investigation and placed his recommendation on the record. He then answered questions posed him by the parties.

**The Juvenile Court's Ruling**

{¶ 24} On March 7, 2023, the juvenile court issued a judgment entry in which it denied Mother's motion to modify parenting time and overruled and dismissed Father's motion for leave to amend his pleadings and his motion to modify custody.[1]

{¶ 25} With respect to Mother's motion to modify parenting time, the juvenile court found that Mother had "failed in her burden of proof" and that there was "no evidence" to support her motion. The juvenile further found that there was no evidence of abuse or neglect of J.Q.-P. while in Father's care and "not a thread of evidence that sexual abuse of [J.Q.-P.] occurred" — while in Father's care or otherwise. The juvenile court noted that "[i]ndividuals' perceptions or presumptions are not significant threats" and that "[f]alse reports could lead to a 'change of circumstances' and affect the best interest of the child." With respect to Father's motions, the juvenile court stated:

> When browsing the Court's file on September 20, 2022, the Court found no motion was filed by Father for modification of the Court's Parenting Time Order or modifying the parent approved for school purposes or medical decisions.

---

[1] On March 6, 2022, the juvenile court issued a separate journal entry addressing the issue of child support. Finding a substantial change in circumstances that was not contemplated at the time of the original child support order, the juvenile court significantly reduced Father's monthly child support obligation. The parties have not appealed this journal entry.

On the second day of trial, September 21, 2022, Father filed motions to allow him to file a Motion to Modify Parental Rights and Responsibilities and/or amend his pleadings to conform to the evidence. The Court overruled those motions as not timely filed. The Court subsequently took Father's motions under advisement.

* * *

The Court overrules and dismisses Father's motions, filed September 21, 2022, on the second day of trial to modify custody or allow Father to amend his pleadings to conform to the evidence.

Mother is *pro se*. Mother prepared and argued her Motion to Terminate or Modify Father's Parenting Time; however, to consider modification of the parental custody without a motion filed in this case would be a denial of due process and be fundamentally unfair.

* * *

Since no motion is pending in Father's case, the Court cannot order modification of the parties' current custody/parenting order of May 28, 2019.

* * *

Inasmuch as the Court dismissed Father's motions, the Court has not made a ruling on "change of circumstances" for Father.

{¶ 26} Father appealed, raising the following two assignments of error for review:

Assignment of Error 1: On page 13 of the Judge's Decision, the court erred when the court overruled Father's 15(b) motion to conform the evidence to match the pleadings.

Assignment of Error 2: On page 13 of the Decision, the court erred when the court dismissed Father's motion to modify custody.

**Law and Analysis**

## Motion for Leave to Amend Pleadings to Conform to the Evidence

{¶ 27} In his first assignment of error, Father argues that the juvenile court abused its discretion in denying his motion to amend his pleadings to conform to the evidence under Civ.R. 15(B). He asserts that the matter should "be decided as if his 15([B]) motion was granted" and that "he be named the residential parent and legal custodian of J.Q.-P."

{¶ 28} Civ.R. 15(B) provides:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

{¶ 29} In determining whether the parties impliedly consented to litigate an issue, courts consider various factors, including "whether they recognized that an unpleaded issue entered the case; whether the opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were to be retried on a different theory; and whether the witnesses were subjected to extensive cross examination on the issue." *State ex rel. Evans v. Bainbridge Twp.*

*Trustees*, 5 Ohio St.3d 41, 46, 448 N.E.2d 1159 (1983), paragraph one of the syllabus. "Under Civ.R. 15(B), implied consent is not established merely because evidence bearing directly on an unpleaded issue is introduced without objection. Rather, it must appear that the parties understood the evidence was aimed at the unpleaded issue." *Id.* at 46. Further, an issue may not be tried by implied consent where it would result in substantial prejudice to a party. *Id.* at 45. "[D]ue to the requirements of procedural due process, trial of unpleaded issues by implied consent is not lightly inferred." *Meilen v. Meilen*, 10th Dist. Franklin No. 13AP-66, 2013-Ohio-4883, ¶ 24, citing *Grand Light & Supply Co., Inc. v. Honeywell, Inc.*, 771 F.2d 672, 681 (2d Cir.1985).

{¶ 30} We review a trial court's denial of a Civ.R. 15(B) motion to amend pleadings for abuse of discretion. *Evans* at paragraph three of the syllabus. A trial court abuses its discretion if its decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). As the Ohio Supreme Court explained in *Huffman v. Hair Surgeon*, Inc., 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985):

> "[A]n abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias."

*Id.* at 87, quoting *State v. Jenkins*, 15 Ohio St.3d 164, 222, 473 N.E.2d 264 (1984). A decision is unreasonable when "no sound reasoning process" supports the decision. *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An abuse of discretion also occurs when a court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

{¶ 31} Father argues that the juvenile court abused its discretion in denying his motion for leave to amend his pleadings because the parties "expressly and impliedly consented to try the matter of custody," Mother had notice of and a "fair opportunity" to present evidence on "the issue of custody" and, in fact, presented evidence on the issue at the hearing, each witness who could speak to the issue was cross-examined on "the issue of custody" and Father had relied on the juvenile court's prior statements that custody was at issue in failing to file a motion to modify custody earlier in the proceedings, thinking it was "unnecessary." Father further contends that "[w]hile it could be viewed as reasonable to deny the motion based on the discussion and [M]other's presentation of [the] case involving the issue of custody, to deny Father's motion in contravention of the Court's own statements is unreasonable" and that Mother's pro se status should not have been considered when ruling on the motion because Mother "chose to represent herself."

{¶ 32} We are mindful that our role is to determine whether the juvenile court abused its discretion, not whether the juvenile court's decision was the same

decision this court would have made. When reviewing a decision for abuse of discretion, we cannot substitute our judgment for that of the juvenile court.

{¶ 33} Based on a thorough review of the record, we cannot say that the juvenile court abused its discretion in denying Father's motion. The record reflects that the juvenile court carefully considered Father's motions. After reviewing Father's motions and considering the arguments of the parties and the evidence presented at the hearing, the juvenile court denied Father's motion because (1) no motion was pending in Father's case, (2) Mother, who was proceeding pro se, "prepared and argued" her motion to terminate or modify Father's parenting time, not a motion to change her designation as the residential parent and legal custodian of J.Q.-P. and (3) "to consider modification of the parental custody without a motion filed in this case would be a denial of due process and would be fundamentally unfair." Even assuming Civ.R. 15(B) applied here,[2] Father has not shown that the

---

[2] In the context of continuing jurisdiction in divorce actions, the Tenth District observed in *Meilen*, 2013-Ohio-4883:

> Although Civ.R. 15(B) refers to pleadings, not motions, we find it applicable to this case. Generally, the Ohio Rules of Civil Procedure govern divorce actions, Civ.R. 75(A), and nothing in Civ.R. 75 specifically exempts divorce actions from the application of Civ.R. 15(B). Moreover, a motion invoking a domestic relations court's continuing jurisdiction operates much like a complaint. When a party files such a motion, it must serve the motion as if it was a complaint. Civ.R. 75(J). Like a complaint, the motion notifies the non-moving party and the domestic relations court of the issues the moving party seeks to resolve. Civ.R. 15(B), therefore, determines when the scope of the motion must expand to include issues not raised in the motion.

*Id.* at ¶ 22.

Likewise, in this case, the juvenile court's continuing jurisdiction was invoked by the filing of a motion. *See* Juv.R. 35(A); *see also In re H.W.*, 114 Ohio St.3d 65, 2007-

juvenile court acted arbitrarily, unreasonably or unconscionably in denying him relief under Civ.R. 15(B).

{¶ 34} In his motion for leave to amend his pleadings, Father did not identify the "pleading" he sought leave to amend or the specific amendment he sought to make to such pleading. He merely asserted that the juvenile court should grant his motion to amend because the parties "recognized that Custody was at issue," had "a more than fair opportunity to address the issue" at the evidentiary hearing and "Mother's witnesses and exhibits bore directly on the issue of custody."

{¶ 35} However, the only motions Father had filed were a motion to show cause and an amended motion to show cause, both of which related to Mother's alleged interference with his parenting time. Father had not filed any motion to modify the juvenile court's May 28, 2019 judgment entry allocating parental rights and responsibilities. Further, the record reflects that Father withdrew his motions to show cause during the hearing, after the parties reached an agreement with respect to Father's missed parenting time. Accordingly, there was no "pleading" of Father's to amend. The only motion before the court was Mother's motion to modify parenting time and support.

{¶ 36} Despite Father's claims to the contrary, we see nothing in the record to indicate that Mother expressly consented to litigate the issue of whether the

Ohio-2879, 868 N.E.2d 261, ¶ 11 ("The Rules of Civil Procedure apply to custody proceedings in juvenile court except when they are clearly inapplicable."), citing former Civ.R. 1(C)(7) and *State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 360, 626 N.E.2d 950 (1994); *In re A.Z.*, 8th Dist. Cuyahoga No. 108627, 2020-Ohio-2941, ¶ 36. Accordingly, we believe a similar rationale would apply here.

juvenile court should change her designation as J.Q.-P.'s residential parent and legal custodian. There is no transcript of the January 27, 2022 pretrial conference in the record. Accordingly, we do not know what was said at that conference. The juvenile court was in the best position to know what occurred at that conference, including whether Mother understood that an "unpleaded issue" was part of the case, and to what extent Mother would be prejudiced if Father's motion for leave to amend were to be granted and the issue of a possible change in residential parent/legal custodian status were to be litigated at the September 20, 2022 evidentiary hearing. That the parties may have previously been engaged in settlement discussions that included a possible change in the residential parent does not mean Mother agreed to litigate that "unpleaded issue" when those settlement discussions failed. When the possibility of proceeding on Father's unfiled motion was raised in the middle of the evidentiary hearing, Mother did not agree to it.

{¶ 37} That Mother presented evidence on issues relevant to custody at the evidentiary hearing does not mean she impliedly consented to litigate the issue of whether she should continue to be the residential parent and legal custodian of J.Q.-P. At issue was her own motion to modify Father's parenting time. The evidence Mother presented was relevant to that motion.

{¶ 38} Father has cited no relevant legal authority supporting his position that the juvenile abused its discretion in denying his motion for leave to amend his pleadings. Apart from Civ.R. 15(B) and two cases setting forth the standard of review on a Civ.R. 15(B) motion, Father cites only three cases in his appellate brief

— *Edmondson v. Steelman*, 87 Ohio App.3d 455, 458, 622 N.E.2d 661 (12th Dist.1992); *Vignal v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 69603, 1996 Ohio App. LEXIS 4194 (Sept. 26, 1996); and *Shoemaker v. Shoemaker*, 4th Dist. Pike No. 468, 1992 Ohio App. LEXIS 4737 (Sept. 9, 1992). None of those cases involves facts or circumstances even remotely similar to those at issue here. None of those cases involves a situation in which a party sought leave to amend a pleading or motion under Civ.R. 15(B) that was never filed and none of those cases involves a situation where the parties were found to have impliedly consented to litigate whether a parent's status as a child's residential parent and legal custodian should be changed (or any other child custody issue).

{¶ 39} *Edmondson* involved the denial of a motion for leave to amend a complaint under Civ.R. 15(A) to assert a prayer for punitive damages in a negligence action. In that case, the Twelfth District held that the trial court did not abuse its discretion in denying the motion because the appellant failed to make a prima facie showing that he could present sufficient evidence to support a claim for punitive damages. *Edmondson* at 457-458, 460-461. In *Vignal*, the plaintiff sought to recover damages after a physician perforated his intestine during a surgical procedure. This court held that the trial court did not abuse its discretion in denying the plaintiff's Civ.R. 15(B) motion for leave to amend his complaint (which alleged lack of informed consent) to include a claim for battery because the plaintiff "failed to make a prima facia showing that he could support, with facts, an allegation of battery." *Vignal* at 16-17. In *Shoemaker*, the Fourth District held that the parties

did not impliedly consent to try the unpleaded issue of whether appellee had a right of action against appellant for contribution. *Shoemaker* at 15-18.

{¶ 40} Because Father has not shown that the juvenile court acted unreasonably, arbitrarily or unconscionably in denying his motion for leave to amend his pleadings, Father's first assignment of error is overruled.

### Dismissal of Father's Motion to Modify Parenting Rights

{¶ 41} In his second assignment of error, Father asserts that the juvenile court erred in dismissing his motion to modify custody. However, Father's brief contains no argument in support of his second assignment of error. An appellant's brief must include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7). An appellate court may disregard an assignment of error presented for review if the appellant fails to identify in the record the error on which the assignment of error is based, fails to cite to any legal authority in support of an argument or fails to argue the assignment separately in the brief, as required under App.R. 16(A)(7). *See* App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."); *V.C. v. O.C.*, 8th Dist. Cuyahoga No. 109988, 2021-Ohio-1491, ¶ 87; *Story v. Story*, 8th Dist. Cuyahoga No. 109850, 2021-Ohio-2439, ¶ 29.

{¶ 42} "An appellate court is not obliged to construct or develop arguments to support an appellant's assignment of error and 'will not "guess at undeveloped claims on appeal."'" *State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 56 (8th Dist.), quoting *State v. Piatt*, 2020-Ohio-1177, 153 N.E.3d 573, ¶ 39 (9th Dist.), quoting *McPherson v. Goodyear Tire & Rubber Co.*, 9th Dist. Summit No. 21499, 2003-Ohio-7190, ¶ 31. "'If an argument exists that can support this assigned error, it is not this court's duty to root it out.'" *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 72, quoting *Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028, 22 (May 6, 1998).

{¶ 43} Father's generalized assertion that the juvenile court erred in dismissing his motion to modify custody — without any explanation or citation to supporting legal authority — does not satisfy Father's obligation under App.R. 16(A)(7). Accordingly, we disregard Father's second assignment of error.

{¶ 44} Furthermore, even if Father had argued his second assignment of error, it is doubtful that we would have jurisdiction to consider it given that (1) no ruling was made on the merits of Father's motion, i.e., the motion was dismissed without prejudice, (2) Father could refile it and (3) Father did not show that he would relinquish any rights or would otherwise be prejudiced if required to refile his motion. Here, the juvenile court in its judgment entry clearly left the door open for Father to refile his motion to modify custody, noting that the court had "not made a ruling on 'change of circumstances' for Father" and providing instruction regarding the use of evidence "to establish their case-in-chief" "[i]f either party files a motion

to modify the Judgment entry of May 28, 2019." A dismissal that is not based on the merits and is without prejudice is generally not a final, appealable order because it does not prevent a party from refiling. *See, e.g., M.E.D. v. P.K.*, 8th Dist. Cuyahoga No. 112070, 2023-Ohio-3471, ¶ 11 (trial court's dismissal of father's motion to modify child support and obligation for medical insurance after he failed to perfect service of the motion on mother was not a final, appealable order); *V.C. v. O.C.*, 8th Dist. Cuyahoga No. 113181, 2024-Ohio-344, ¶ 6-7, 9, 21, 30-31 (trial court order dismissing, for want of prosecution and failure to comply with court order, father's motions to modify parental rights and to show cause based on alleged interference with parenting time was not a final, appealable order where dismissal was without prejudice, father could refile his motions and father did not claim that there were certain rights he would be relinquishing if he had to refile his motions or that a refiling of his motions would prejudice his ability to seek the relief sought in his motions).

{¶ 45} Judgment affirmed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

It is ordered that appellee recover from appellant the costs herein taxed.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR